811 F.2d 1444
 Rita BARBOSA, as personal representative of the estate of
James Barbosa, deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
George E. STANTON, as personal representative of the estate
of Edward L. Stanton, deceased,
Plaintiff-Counterclaim-Cross-Claim-
Defendant/Appellant,
v.
UNITED STATES of America, and Southern Aero Traders, Inc.,
Defendants-Counterclaim-Cross-Claim-Plaintiffs/Appellees.
Shirley T. KERP, as personal representative of the estate of
Devareh Yvonne Moss, deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, and Southern Aero Traders, Inc.,
Defendants-Appellees.
 No. 85-5651.
 United States Court of Appeals,
Eleventh Circuit.
 March 9, 1987.
 
 Mark Hicks, Barbara Green, Miami, Fla., for plaintiff-appellant.
 David V. Hutchinson, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and ANDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 These consolidated actions arose out of the fatal crash of a Beechcraft twin engine aircraft, number N27GD, in which the pilot, James Barbosa, and his two passengers, Edward Stanton and Devareh Moss, were killed. Personal representatives of the deceased brought suit against the United States under the Federal Tort Claims Act, alleging negligence of air traffic controllers and a flight service weather briefer. Following a bench trial, the court found that the failure of the air traffic controllers to inform the pilot of weather conditions did not constitute a breach of any duty. The judge also determined that Barbosa operated the aircraft in violation of standard practices and that he had assumed the risk of flying under certain weather conditions. Judgment was entered, and plaintiffs appealed. We affirm.
 
 I. FACTS
 
 2
 The relevant facts are as follows. On July 19, 1981, at 3:54 p.m., pilot Barbosa called the Flight Service Station, Miami, Florida (hereinafter FSS), and requested a weather briefing for a Visual Flight Rules (VFR)[1] flight from Opa-Locka, Florida, to Craig Field, Jacksonville, Florida. Barbosa received a briefing which was generally favorable and included all of the current weather information available as of 3:27 p.m.[2] Barbosa's plane took off at about 4:00 p.m., after Barbosa had filed a VFR flight plan which required him to remain in touch with various air traffic control centers along his route. After he was airborne and en route, Barbosa made a pilot report to Palm Beach Approach Control that he was observing thunderstorms. He then requested some weather information for Craig Field in Jacksonville.
 
 
 3
 Later in the flight, the Miami Air Route Traffic Control Center (hereinafter Miami Center) asked the Patrick Air Force Base Radar Approach Control (hereinafter RAPCON) to take the handoff of Barbosa's VFR flight aircraft. The RAPCON is primarily an approach/departure control center which handles aircraft landing at and departing from airports within its airspace. Barbosa's plane, N27GD, was a transition or en route aircraft which was only passing through the RAPCON's airspace. During the course of this transit, N27GD was required as a VFR aircraft to remain well clear of all clouds.
 
 
 4
 At this point, the weather began to change and there were thunderstorms in the area. The controllers did not give N27GD any weather information, nor did Barbosa request such information as he was required to do by the Airman's Information Manual (AIM).[3] Because of the weather conditions, the RAPCON was forced to use weather suppression controls in order to be able to see aircraft on the radar equipment and to provide vectoring to other IFR aircraft. Therefore, precipitation echoes were suppressed from the scope and the controllers did not see any particular weather problems which impacted on the flight of N27GD.
 
 
 5
 At 5:05 p.m., Barbosa reported to the RAPCON that he was going to attempt to maintain VFR conditions by descending to 6500 feet. However, his attempt to remain in VFR conditions was unsuccessful and at 5:09 p.m., he reported that he was temporarily in IFR conditions and requested abbreviated IFR clearance. Barbosa informed the RAPCON that he didn't want a full IFR flight plan but a short range one because he was in the "clouds" but believed that he could break his way through to VFR conditions. The RAPCON gave N27GD short range clearance for IFR which Barbosa acknowledged. Barbosa did not object to the clearance or ask for any clarifications, which he was required to do by the AIM if he did not understand anything. Two minutes later, radar contact was lost with N27GD, and the aircraft plunged into the ocean. It is undisputed that all on board were killed.
 
 II. DISTRICT COURT
 
 6
 The trial judge determined that Florida law applied and that Florida law provides that the ordinary rules of negligence and due care apply with regard to the operation of aircraft. Kasanof v. Embry-Riddle, Co., 157 Fla. 677, 26 So.2d 889, 891-92 (1946); Peavey v. Miami, 146 Fla. 629, 1 So.2d 614, 618 (1941). The plaintiffs asserted that it was negligence for the United States Air Force air traffic controllers at the RAPCON to fail to give N27GD weather information concerning thunderstorm conditions and to direct the flight into the bad weather. The trial court ruled that there was no breach of any duty owing by the RAPCON controllers to N27GD. It found that the RAPCON provided Barbosa exactly what he had requested. It was incumbent upon Barbosa to obtain additional weather information where he had prior information which suggested the need for further inquiry. See DeVere v. True-Flite, Inc., 268 F.Supp. 226, 228 (E.D.N.C.1967). The trial judge held that the air traffic controllers had no independent duty to apprise Barbosa of weather conditions in the absence of a specific request for information. Indeed, the controllers had the right to rely on the assumption that N27GD was a VFR aircraft and would circumnavigate weather so as to remain VFR, as the pilot is required to do under the provisions of the AIM. See Crossman v. United States, 378 F.Supp. 1312, 1316, 1318 (D.Ore.1974).
 
 III. DISCUSSION
 
 7
 On appeal, plaintiffs argue that the district court had an erroneous legal view of the controllers' duty to the occupants of N27GD. They assert that in reaching its conclusion, the court relied upon the AIM--a pilot's manual--rather than the binding Air Traffic Control Manual (ATCM). Plaintiffs are correct in their claim that any duty would arise from the ATCM. Daley v. United States, 792 F.2d 1081, 1085 (11th Cir.1986); Gill v. United States, 429 F.2d 1072, 1075 (5th Cir.1970).[4] However, it does not appear that the district judge attempted to measure the conduct of the controllers through the AIM, as plaintiffs allege. In citing relevant sections of the AIM,[5] the judge observed that the AIM sets the standard for pilots in the operation of aircraft. In any event, there is substantial interplay between the controllers' duties and the pilot's duty to fly his aircraft safely. Gill v. United States, 429 F.2d at 1077.
 
 
 8
 Though the district court did not expressly refer to the ATCM in reaching its conclusion that there was no breach of duty on the part of the air traffic controllers, reference to the ATCM would only have supported its conclusion, contrary to plaintiffs' argument. Plaintiffs argue that the ATCM requires controllers to provide weather information to pilots. However, we do not read the ATCM as setting forth such mandatory duties with regard to weather information. Weather information is available to pilots, both on the ground and airborne, from other sources. Radar-observed weather information falls under the "additional services" provisions of the ATCM 7110.656, Sec. 3, p 50. Additional services are to be provided by controllers only "to the extent possible," contingent upon such factors as limitations of radar and higher priority duties. ATCM 7110.6513, Sec. 3, p 45; Mallen v. United States, 506 F.Supp. 728, 735 (N.D.Ga.1979). The provisions which plaintiffs claim give rise to a duty read as follows:
 
 50. Weather and Chaff Services
 
 9
 p a. Issue pertinent information on observed/reported weather or chaff areas. Provide radar navigational guidance and/or approve deviations around weather or chaff areas when requested by the pilot....
 
 
 10
 * * *
 
 
 11
 p b. In areas of significant weather, plan ahead and be prepared to suggest, upon pilot request, the use of alternative routes/altitudes.
 
 
 12
 In light of these provisions, we cannot conclude that the district court misunderstood the controllers' duty with respect to weather. Under the circumstances of this case, where Barbosa did not seek weather information nor an alternative flight plan, where the controllers were reasonably employing weather suppression controls on the radar, and where those suppression controls prevented the controllers from observing precipitation echoes, the trial court was not clearly erroneous in finding that the controllers breached no duty of care to N27GD. See Spaulding v. United States, 455 F.2d 222, 228 (9th Cir.1972); Mallen v. United States, 506 F.Supp. at 728.
 
 
 13
 Plaintiffs make a further argument that there was a breach of duty when the Flight Service Station in Miami undertook to provide weather information in the initial briefing to Barbosa, and provided incorrect information. Plaintiffs claim that Barbosa was given an inaccurate pre-flight weather briefing, which minimized the dangerous weather conditions that were developing. The trial court implicitly rejected this argument. The record does not establish that such a finding is clearly erroneous. There was ample evidence to support a finding that the Miami report was not incorrect. The pre-flight briefing did indicate the presence of thunderstorms and limited visibility along the coast. Further, the briefing did not purport to provide forecast information, even if that information was available to the briefer. Rather, as the plaintiffs' witness conceded, the briefer was talking about current weather when he indicated to Barbosa that he should be all right if he followed the coast. The record also supports a finding that the Miami report, even if inaccurate, was not a proximate cause of the crash. Barbosa sought updated weather reports once he was airborne and he was able to see developing weather conditions with his own eyes. His decision to continue his flight was his own decision based on accurate weather information. Spaulding v. United States, 455 F.2d at 227. Plaintiffs provide no support for their position that FSS had an ongoing duty to keep Barbosa informed of the changing weather conditions, especially since the original briefing was expressly accurate only as of 3:27 p.m.
 
 
 14
 Thus, we hold that it was not clearly erroneous for the trial court to find that no duty of care arose either from the ATCM or from the FSS' original weather briefing.[6]
 
 
 15
 AFFIRMED.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Visual Flight Rules (VFR) signifies flight by visual reference to the ground and horizon. Conversely, Instrument Flight Rules (IFR) signifies flight by reference to instruments in the aircraft
 
 
 [2]
 The weather briefing described a high pressure area as dominating most of the area with a few thunderstorms scattered along the route, most of them inland, and which could be mostly avoided by a coastal route. Cumulonimbus and rain showers to be circumnavigated were reported north of Palm Beach. Daytona Beach was reported to be IFR due to smoke and haze limiting visibility to two miles. Jacksonville was reported as good VFR
 
 
 [3]
 This is a publication that pilots are obliged to follow. Throughout the AIM, emphasis is placed on pilots reporting weather and obtaining weather information
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209
 
 
 [5]
 AIM, Sec. 511
 b. Weather Avoidance Assistance
 (1) To the extent possible, controllers will issue pertinent information on weather or chaff areas and assist pilots in avoiding such areas when requested.
 (emphasis added)
 
 
 [6]
 Plaintiffs' other claims of error are without merit and require no discussion. Some of the other claims are moot. Plaintiffs assert that the trial court erred in ruling that their claims were barred by assumption of risk. They also argue that it was error to impute the pilot's negligence to the passengers. Neither issue needs to be reached if there is no duty that has been breached by the air traffic controllers