Barbara A. JACKSON, Administratrix, etc., Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 98–1043.

United States Court of Appeals, First Circuit.

Heard July 30, 1998.

Decided Sept. 16, 1998.

---

Anthony Tarricone and Camille F. Sarrouf, with whom Joseph P. Musacchio and Melick & Porter, LLP were on brief, for appellant.

Luke B. Marsh, Attorney, Civil Division, United States Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, was on brief, for appellee.

Before SELYA, BOUDIN and LIPEZ, Circuit Judges.

SELYA, Circuit Judge.

Plaintiff-appellant Barbara A. Jackson, acting in her capacity as administratrix of her husband's estate, sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680 (1994), alleging that the negligence of three Federal Aviation Administration (FAA) employees in failing to furnish appropriate weather advisories proximately caused an aircraft flown by her late husband to crash. Following a bench trial, the district court wrote a thoughtful rescript explaining why the plaintiff should take nothing. *See Jackson v. United States,* 983 F.Supp. 273 (D.Mass.1997). The plaintiff appeals on various grounds.

The facts surrounding the tragic incident that took the life of Cephas W. Jackson, Jr., a respected physician and recreational pilot, are chronicled in the district court's opinion, *see id.* at 276–79, and it would be pleonastic to rehearse them here. Thus, we offer only a thumbnail sketch, referring the reader who thirsts for further detail to the opinion below.

On March 26, 1992, Jackson, desirous of flying from Little Rock, Arkansas, to Charleston, West Virginia, and then on to Massachusetts, requested and received meteorological information, including a so-called "outlook briefing," from the FAA's Jonesboro, Arkansas, Automated Flight Service Station. The next day, he again called Jonesboro and requested a pre-flight weather briefing. Flight Services Specialist Robert Eldridge obliged. *See id.* at 276–77 (describing contents of the pre-flight briefing). After receiving this briefing, Jackson filed a flight plan and departed from Little Rock, bound for Charleston, in his single-engine aircraft (a Mooney M–20M). He had radio contacts with a number of air traffic control facilities as he flew over Tennessee and Kentucky. *See id.* at 277 (describing same). As he approached Charleston, he engaged in an extensive dialogue with a Charleston-based air traffic controller, Mark Ulanch. *See id.* at 278–79 (describing that colloquy). The fatal crash occurred in the course of this approach.

We have often preached, but perhaps too seldom practiced, the philosophy that "when a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate." *Lawton v. State Mut. Life Assur. Co. of Am.,* 101 F.3d 218, 220 (1st Cir.1996). This case fits the *Lawton* model. Accordingly, we resist the temptation to repastinate ground that is already well-ploughed and affirm principally on the basis of the district court's opinion. We add only four sets of comments.

■ *First:* Where, as here, the district court conducts a bench trial and serves as the factfinder, its determinations of negligence, proximate cause, and similar issues are entitled to considerable deference. "[W]e consistently have reviewed adjudications of negligence arising in the course of bench trials by reference to the clearly erroneous test." *Sierra Fria Corp. v. Evans,* 127 F.3d 175, 181 (1st Cir.1997). This deferential standard acknowledges that, unlike an appellate tribunal, the trial court "sees and hears the witnesses at first hand and comes to appreciate the nuances of the litigation in a way which appellate courts cannot hope to replicate." *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 152 (1st Cir.1990). Thus, a trial court's factual determinations will be set aside only if, "after careful evaluation of the evidence, we are left with an abiding

conviction that those determinations and findings are simply wrong." *State Police Ass'n v. Commissioner*, 125 F.3d 1, 5 (1st Cir.1997).

█ This standard is critically important here. At many junctures, more than one plausible inference can be drawn from the underlying facts. On clear-error review, we cannot second-guess the trier's choices among those competing inferences even if, had we been sitting as triers of the facts, we might have arrived at a different set of judgments. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

*Second:* The appellant argued below that Eldridge, the FAA employee who provided the decedent's pre-flight briefing, was guilty of negligence because he failed to incorporate specific weather advisories from the National Weather Service into that briefing.[1] The trial court concluded that, although Eldridge's pre-flight briefing did not specifically mention the advisories by name, it comprehensively summarized the weather conditions that Jackson could expect to encounter during his flight. *See Jackson*, 983 F.Supp. at 280. Accordingly, the court determined that Eldridge was not negligent. *See id.*

█ In this venue, the appellant attempts an end-run around the strictures of clear-error review by positing the existence of an error of law. To that end, she argues that Eldridge's failure to mention the AIRMETs constituted negligence per se. In mounting this argument, she points to paragraphs 3–10(a) & (b) of the Flight Services Handbook (the Handbook), a procedural guide issued by the FAA in the interests of ensuring flight safety. These paragraphs limn the information a flight services specialist should gather preparatory to delivering a pre-flight briefing and the procedures to be followed in transmitting this data to pilots. Many of these steps are couched in mandatory terms.[2] The appellant now contends, for the first time, that the court had no option but to find Eldridge guilty of negligence because he violated the obligatory Handbook provisions.

█ It is an abecedarian rule that litigants ordinarily cannot shift legal theories in midstream: "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 21 (1st Cir.1992). Inasmuch as the appellant never advanced a negligence per se theory below, this principle has obvious applicability here.

The appellant offers two intertwined reasons why we should excuse her procedural default. First, she suggests that, in a bench trial at which the district court does not require the parties to submit written requests for conclusions of law, a litigant should not be penalized for failing spontaneously to articulate her position on the relevant legal issues. Second, she contends that, regardless of her default, the district court had an unflagging duty to divine, interpret, and apply the governing legal standards correctly. Neither reason is persuasive.

█ A trial court, sitting jury-waived, may—but need not—ask for suggested findings and conclusions. Either way, the rule is straightforward: with few exceptions (none applicable here), a party who, having adequate opportunity, fails to alert the trial court to a particular legal theory cannot thereafter be heard to complain that the

---

1. Two types of weather advisories, each of which is known by an acronym, are pertinent here: AIRMETs (advisories concerning weather conditions potentially hazardous to aircraft having limited capability) and SIGMETs (advisories to all aircraft about severe weather). *See Jackson*, 983 F.Supp. at 277 n. 5. The appellant's argument in this case focuses principally on the former.

2. The Handbook describes a standard briefing as requiring several items to be listed in a pat sequence. *See* Handbook, § 2, ¶ 3–10(b). The briefer is instructed, *inter alia*, to "[p]rovide a brief statement describing the type, location, and movement of weather systems," *id.* § 2, ¶ 3–10(b) 3, "[s]ummarize forecast winds aloft for the proposed route," *id.* § 2, ¶ 3–10(b) 7, and "[i]nform the pilot of ... any flow control advisories on hand that might affect the proposed flight," *id.* § 2, ¶ 310(b) 9.

court overlooked that theory. *See, e.g., Martinez v. Colon,* 54 F.3d 980, 987 (1st Cir. 1995); *Teamsters,* 953 F.2d at 21; *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). This is as it should be. Trial judges are not mind-readers, and they should not be expected to do counsel's homework.

Here, moreover, the appellant had a second opportunity to bring her theory to the trial judge's attention. Under Fed.R.Civ.P. 52(a), when an action is tried upon the facts without a jury, "the court shall find the facts specially and state separately its conclusions of law." A litigant who believes that those findings or conclusions are erroneous in any respect may file a motion to alter or amend the judgment no later than ten days after its entry. *See* Fed.R.Civ.P. 52(b). Thus, if the appellant believed that the district court erred in failing to apply the doctrine of negligence per se, she could have brought the matter to the court's attention by way of Rule 52(b). *See, e.g., National Metal Finishing Co. v. Barclays American/Commercial, Inc.,* 899 F.2d 119, 122 (1st Cir.1990). She did not do so. We see no reason to excuse her twice-repeated procedural default.

▪ We add that, in this case, all roads lead to Rome. Because the FTCA incorporates the substantive law of the place of the harm, *see* 28 U.S.C. § 1346(b), and the fatal crash occurred in West Virginia, we look to the law of that jurisdiction for the rule of decision. *See FDIC v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Reilly v. United States,* 863 F.2d 149, 161 (1st Cir.1988). Under West Virginia law, an individual's noncompliance with a safety regulation is not negligence per se, but, rather, as the district court found in this case, it is at most some evidence of negligence. *See Waugh v. Traxler,* 186 W.Va. 355, 412 S.E.2d 756, 759–60 (1991) (holding that a violation of a safety statute is prima facie negligence and not negligence per se); *Miller v. Warren,* 182 W.Va. 560, 390 S.E.2d 207, 208–09 (1990) (explaining that noncompliance with a fire code or similar regulation constitutes no more than prima facie negligence). The appellant's hypothesis that a failure to comply strictly with the Handbook provisions constitutes negligence per se under West Virginia law is, therefore, legally incorrect.

▪ *Third:* The appellant's fallback position is no more fruitful. She claims that, even if the district court applied an appropriate legal standard, it committed clear error in failing to find Eldridge negligent. This claim, although couched in the idiom of clear-error review, is no more than a thinly-veiled invitation to have us substitute our collective judgment for that of the district court. We decline the invitation.

▪ Judge O'Toole heard fifteen days of testimony, much of it pointing in different directions. Having carefully combed the record, we are satisfied that he had before him competent evidence that Eldridge substantially complied with the obligations imposed by the Handbook. The evidence supports (though admittedly it does not compel) findings to the effect that Eldridge exercised due diligence in obtaining relevant information concerning aeronautical and weather conditions and that he provided a reasonably complete pre-flight briefing to Jackson on the morning of take-off. *See Jackson,* 983 F.Supp. at 280; *see also Davis v. United States,* 824 F.2d 549, 552 (7th Cir.1987) (describing the information that must be assembled for a pre-flight briefing). This data included current and future weather trends and unusual weather activity in the areas along Jackson's anticipated path of flight. *See Jackson,* 983 F.Supp. at 280–81. Contrary to the appellant's claim that a flight services specialist must issue specific weather advisories to a pilot in *haec verba,* the law only requires a weather briefer to interpret, translate, and convey in summarized form relevant weather information. *See Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 282 (5th Cir.1987); *see also Jackson,* 983 F.Supp. at 280 n. 10 (reprinting Handbook instruction: "Do not read individual weather reports or forecasts unless, in your judgment, it is necessary to emphasize an important point or unless specifically requested to do so by the pilot.").

In short, the law allows a weather briefer a certain degree of latitude in transmitting weather information to a pilot. The evidence

of record here adequately supports the district court's conclusion that Eldridge used this latitude in a permissible fashion by giving Jackson a comprehensive forecast and accurately summarizing all pertinent weather advisories. In particular, Eldridge informed Jackson that he could expect icing conditions at his planned altitude from the eastern half of Kentucky to West Virginia, *see Jackson*, 983 F.Supp. at 280, and warned of "patchy precipitation," "light snow showers" (which, coupled with gusting winds, would make it appear as if it were "snowing sideways"), and near-freezing conditions at the Charleston airport, *see id.* at 281. This constituted, at the very least, substantial compliance with the regimen specified by the Handbook. No more was exigible. *See Davis*, 824 F.2d at 554–55; *Barbosa v. United States*, 811 F.2d 1444, 1447 (11th Cir.1987); *cf. Delta Air Lines, Inc. v. United States*, 561 F.2d 381, 390 (1st Cir.1977) (holding that "a substantial and unjustified failure" to follow FAA safety provisions is a persuasive indication of a lack of due care).

 *Fourth:* Under West Virginia law, a plaintiff is not entitled to recover in a wrongful death suit if her decedent's negligence equals or exceeds the defendant's. *See Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879, 885 (1979) (elucidating comparative negligence doctrine); *see also* W. Va.Code § 55–7–5 (1994) (stipulating that a wrongful death action may succeed only if the party injured would have been entitled to recover damages had death not ensued). The appellant asseverates that the trial court clearly erred in ranking Jackson's negligence as greater than the combined negligence of the three main government actors. Because the district court supportably found that neither Eldridge nor Christine Garcia was negligent,[3] this asseveration reduces to a naked claim that the negligence

of Ulanch, the Charleston-based air traffic controller, was more a factor in the crash than the negligence of the decedent.

Judge O'Toole found both men negligent: Ulanch for neglecting to transmit no fewer than six weather advisories that warned of icing conditions as Jackson approached the Charleston Airport,[4] *see Jackson*, 983 F.Supp. at 282; and Jackson both for failing sufficiently to inquire whether dangerous conditions near Charleston persisted and for braving weather conditions that he knew his aircraft could not withstand, *see id.* at 282–83. In the court's estimation, Jackson's discerned negligence outweighed Ulanch's discerned negligence. *See id.* at 283. Consequently, the court entered judgment for the United States. *See id.* at 284.

We cannot say that the trial court's comparative negligence analysis was "simply wrong." *State Police Ass'n*, 125 F.3d. at 5. As a pilot, Jackson had the primary responsibility for the safety of his aircraft. *See Cappello v. Duncan Aircraft Sales*, 79 F.3d 1465, 1469 (6th Cir.1996); *Davis*, 824 F.2d at 552; *see also* 14 C.F.R. § 91.3 (1998). Awareness of facts and circumstances that pertain to the safe operation of the aircraft is paramount, and a pilot, exercising due care for his own safety, must endeavor constantly to update weather information. *See Davis*, 824 F.2d at 551. Eldridge's initial briefing, which mentioned icing conditions near Charleston, should have served as a red flag to a wary pilot. At a bare minimum, this initial briefing put Jackson on inquiry notice and triggered an affirmative duty to inquire about whether the hazardous conditions persisted. *See Somlo v. United States*, 416 F.2d 640, 645 (7th Cir.1969) (holding that it was a pilot's duty "to inquire whether icing was still a factor" once forewarned of icing condi-

---

**3.** The court held that Garcia, an Indianapolis air traffic controller, was not negligent in failing to issue a particular weather advisory to Jackson while in flight. *See Jackson*, 983 F.Supp. at 282. In the court's view, this oversight was "too isolated an error to support a conclusion of negligence" on Garcia's part, and in all events, had no causal relationship to the accident. *Id.* Despite the appellant's all-out assault on this conclusion, we discern no mistake of fact or of law.

*See, e.g., Davis*, 824 F.2d at 555 (holding that a weather briefer did not act negligently despite failing to furnish one updated weather advisory to a pilot).

**4.** The warnings, known as PIREPs (pilot weather reports), had in turn been transmitted to Ulanch from other pilots flying in the vicinity of Charleston.

tions). Nothing in the record suggests that Jackson fulfilled this duty.

■ Relatedly, the record bears out the district court's determination that Jackson failed to take reasonable steps to avoid weather conditions that he knew his single-engine Mooney M–20M airplane could not withstand. Jackson was an experienced pilot who had owned the aircraft for some time. The Mooney flight manual explicitly warned that the M–20M was not equipped for flight in icing conditions. The lower court supportably could have found—as, indeed, it did—that Jackson's disregard of this warning not only transgressed an applicable FAA regulation, see 14 C.F.R. § 91.9 (1998) (requiring that an aircraft be operated in compliance with limitations specified in its flight manual), but also ran counter to common sense. Flying an airplane contrary to the safety provisions stipulated in the applicable flight manual is itself a sufficient predicate for a finding of negligence. See Hoban v. Grumman Corp., 717 F.Supp. 1129, 1136–37 (E.D.Va.1989).

In determining the relative negligence of Jackson and Ulanch, the trial court also properly considered the degree to which Jackson had been forewarned of the continued presence of icing conditions in the Charleston area. While approaching the Charleston airport, Jackson radioed Air Traffic Control and acknowledged that he had received weather information from Charleston's Automatic Terminal Information System, a continuous twenty-four hour source of current weather information. Equally as important, several pilots in the Charleston area had transmitted reports warning of icing conditions, and at least one of these reports was transmitted on the same radio frequency Jackson earlier used to contact Charleston Air Traffic Control. See Jackson, 983 F.Supp. at 278. The court inferred that Jackson heard the weather reports from other pilots warning of icing conditions in ample time to take corrective action. See id. Under the circumstances, the inference was reasonable, particularly given the regulatory requirement that pilots must maintain a continuous watch on an "appropriate radio frequency" during flight. 14 C.F.R. § 91.183 (1998).

■ It is both good law and sound logic that a pilot bears a responsibility to circumvent dangerous weather conditions that are perceptible through his own senses. See Spaulding v. United States, 455 F.2d 222, 226–27 (9th Cir.1972). This includes the duty to interpret weather conditions that are confronted en route, evaluate their significance based on past experiences, and avoid inappropriate courses of action. See Moorhead, 828 F.2d at 283. The lower court concluded that Jackson did not fulfill this obligation. See Jackson, 983 F.Supp. at 282–83. This conclusion, too, is supportable. Jackson was a very experienced pilot who had logged nearly 500 hours of flight time and was familiar with the warning signs for icing conditions. See id. at 275. Indications of icing conditions unsuitable for flight in a single-engine Mooney M–20M surrounded Jackson as he neared Charleston, including near-freezing temperatures and variable amounts of precipitation. Still, Jackson took no affirmative action to avoid the looming peril.[5] These, and other, facts fully supported a finding that a pilot of Jackson's experience should have recognized the danger of proceeding single-mindedly through perilous prospects.

To be sure, Ulanch's negligence also was starkly apparent. We do not minimize his failings. Comparing the relative fault of two negligent actors, however, is an exercise better committed to a trial judge, who has an opportunity to see and hear the witnesses, than to the court of appeals. Only rarely—and in extremely compelling circumstances—will an appellate panel, from the more restrained perspective afforded by a cold record, tinker with the trier's weighing of relative fault. We have no occasion to essay so unusual a step today. Taking into account the totality of the evidence, we cannot say that the trial court clearly erred in determining that Jackson's negligence equaled or exceeded that of Ulanch.

---

**5.** By contrast, the court heard testimony that, during an earlier flight in similar conditions, Jackson averted icing conditions by changing altitudes.

We need go no further.[6] The other arguments raised by the appellant are plainly insufficient, adequately answered in the district court's memorandum opinion, or both. Hence, we uphold the district court's determination that the appellant is not entitled to recover damages under the FTCA.

*Affirmed.*

6. The court below offered an alternative rationale for its decision. *See Jackson,* 983 F.Supp. at 283 (finding a lack of proof regarding causation). Because we conclude that the court's decision can stand based on its primary rationale, we take no view of this alternative holding.