USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1043

 BARBARA A. JACKSON, ADMINISTRATRIX, ETC.,

 Plaintiff, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. George A. O'Toole, Jr., U.S. District Judge]

 Before

 Selya, Boudin and Lipez, Circuit Judges.
 

 Anthony Tarricone and Camille F. Sarrouf, with whom Joseph P.
Musacchio and Melick & Porter, LLP were on brief, for appellant.
 Luke B. Marsh, Attorney, Civil Division, United States
Department of Justice, with whom Frank W. Hunger, Assistant
Attorney General, was on brief, for appellee.

September 16, 1998

 
 
 SELYA, Circuit Judge. Plaintiff-appellant Barbara A.
Jackson, acting in her capacity as administratrix of her husband's
estate, sued the United States under the Federal Tort Claims Act
(FTCA), 28 U.S.C. 1346(b), 2671-2680 (1994), alleging that the
negligence of three Federal Aviation Administration (FAA) employees
in failing to furnish appropriate weather advisories proximately
caused an aircraft flown by her late husband to crash. Following
a bench trial, the district court wrote a thoughtful rescript
explaining why the plaintiff should take nothing. See Jackson v.
United States, 983 F. Supp. 273 (D. Mass. 1997). The plaintiff
appeals on various grounds.
 The facts surrounding the tragic incident that took the
life of Cephas W. Jackson, Jr., a respected physician and
recreational pilot, are chronicled in the district court's opinion,
see id. at 276-79, and it would be pleonastic to rehearse them
here. Thus, we offer only a thumbnail sketch, referring the reader
who thirsts for further detail to the opinion below.
 On March 26, 1992, Jackson, desirous of flying from
Little Rock, Arkansas, to Charleston, West Virginia, and then on to
Massachusetts, requested and received meteorological information,
including a so-called "outlook briefing," from the FAA's Jonesboro,
Arkansas, Automated Flight Service Station. The next day, he again
called Jonesboro and requested a pre-flight weather briefing. 
Flight Services Specialist Robert Eldridge obliged. See id. at
276-77 (describing contents of the pre-flight briefing). After
receiving this briefing, Jackson filed a flight plan and departed
from Little Rock, bound for Charleston, in his single-engine
aircraft (a Mooney M-20M). He had radio contacts with a number of
air traffic control facilities as he flew over Tennessee and
Kentucky. See id. at 277 (describing same). As he approached
Charleston, he engaged in an extensive dialogue with a Charleston-
based air traffic controller, Mark Ulanch. See id. at 278-79
(describing that colloquy). The fatal crash occurred in the course
of this approach.
 We have often preached, but perhaps too seldom practiced,
the philosophy that "when a lower court produces a comprehensive,
well-reasoned decision, an appellate court should refrain from
writing at length to no other end than to hear its own words
resonate." Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d
218, 220 (1st Cir. 1996). This case fits the Lawton model. 
Accordingly, we resist the temptation to repastinate ground that is
already well-ploughed and affirm principally on the basis of the
district court's opinion. We add only four sets of comments.
 First: Where, as here, the district court conducts a
bench trial and serves as the factfinder, its determinations of
negligence, proximate cause, and similar issues are entitled to
considerable deference. "[W]e consistently have reviewed
adjudications of negligence arising in the course of bench trials
by reference to the clearly erroneous test." Sierra Fria Corp. v.
Evans, 127 F.3d 175, 181 (1st Cir. 1997). This deferential
standard acknowledges that, unlike an appellate tribunal, the trial
court "sees and hears the witnesses at first hand and comes to
appreciate the nuances of the litigation in a way which appellate
courts cannot hope to replicate." Cumpiano v. Banco Santander
P.R., 902 F.2d 148, 152 (1st Cir. 1990). Thus, a trial court's
factual determinations will be set aside only if, "after careful
evaluation of the evidence, we are left with an abiding conviction
that those determinations and findings are simply wrong." State
Police Ass'n v. Commissioner, 125 F.3d 1, 5 (1st Cir. 1997).
 This standard is critically important here. At many
junctures, more than one plausible inference can be drawn from the
underlying facts. On clear-error review, we cannot second-guess
the trier's choices among those competing inferences even if, had
we been sitting as triers of the facts, we might have arrived at a
different set of judgments. See Anderson v. City of Bessemer City,
470 U.S. 564, 573 (1985).
 Second: The appellant argued below that Eldridge, the
FAA employee who provided the decedent's pre-flight briefing, was
guilty of negligence because he failed to incorporate specific
weather advisories from the National Weather Service into that
briefing. The trial court concluded that, although Eldridge's
pre-flight briefing did not specifically mention the advisories by
name, it comprehensively summarized the weather conditions that
Jackson could expect to encounter during his flight. See Jackson,
983 F. Supp. at 280. Accordingly, the court determined that
Eldridge was not negligent. See id.
 In this venue, the appellant attempts an end-run around
the strictures of clear-error review by positing the existence of
an error of law. To that end, she argues that Eldridge's failure
to mention the AIRMETs constituted negligence per se. In mounting
this argument, she points to paragraphs 3-10(a) & (b) of the Flight
Services Handbook (the Handbook), a procedural guide issued by the
FAA in the interests of ensuring flight safety. These paragraphs
limn the information a flight services specialist should gather
preparatory to delivering a pre-flight briefing and the procedures
to be followed in transmitting this data to pilots. Many of these
steps are couched in mandatory terms. The appellant now contends,
for the first time, that the court had no option but to find
Eldridge guilty of negligence because he violated the obligatory
Handbook provisions.
 It is an abecedarian rule that litigants ordinarily
cannot shift legal theories in mid-stream: "If any principle is
settled in this circuit, it is that, absent the most extraordinary
circumstances, legal theories not raised squarely in the lower
court cannot be broached for the first time on appeal." Teamsters,
Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v.
Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). Inasmuch
as the appellant never advanced a negligence per se theory below,
this principle has obvious applicability here.
 The appellant offers two intertwined reasons why we
should excuse her procedural default. First, she suggests that, in
a bench trial at which the district court does not require the
parties to submit written requests for conclusions of law, a
litigant should not be penalized for failing spontaneously to
articulate her position on the relevant legal issues. Second, she
contends that, regardless of her default, the district court had an
unflagging duty to divine, interpret, and apply the governing legal
standards correctly. Neither reason is persuasive.
 A trial court, sitting jury-waived, may but need not 
ask for suggested findings and conclusions. Either way, the rule
is straightforward: with few exceptions (none applicable here), a
party who, having adequate opportunity, fails to alert the trial
court to a particular legal theory cannot thereafter be heard to
complain that the court overlooked that theory. See, e.g.,
Martinez v. Colon, 54 F.3d 980, 987 (1st Cir. 1995); Teamsters, 953
F.2d at 21; McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22
(1st Cir. 1991). This is as it should be. Trial judges are not
mind-readers, and they should not be expected to do counsel's
homework. 
 Here, moreover, the appellant had a second opportunity to
bring her theory to the trial judge's attention. Under Fed. R.
Civ. P. 52(a), when an action is tried upon the facts without a
jury, "the court shall find the facts specially and state
separately its conclusions of law." A litigant who believes that
those findings or conclusions are erroneous in any respect may file
a motion to alter or amend the judgment no later than ten days
after its entry. See Fed. R. Civ. P. 52(b). Thus, if the
appellant believed that the district court erred in failing to
apply the doctrine of negligence per se, she could have brought the
matter to the court's attention by way of Rule 52(b). See, e.g.,
National Metal Finishing Co. v. Barclays American/Commercial, Inc.,
899 F.2d 119, 122 (1st Cir. 1990). She did not do so. We see no
reason to excuse her twice-repeated procedural default.
 We add that, in this case, all roads lead to Rome. 
Because the FTCA incorporates the substantive law of the place of
the harm, see 28 U.S.C. 1346(b), and the fatal crash occurred in
West Virginia, we look to the law of that jurisdiction for the rule
of decision. See FDIC v. Meyer, 510 U.S. 471, 478 (1994); Reillyv. United States, 863 F.2d 149, 161 (1st Cir. 1988). Under West
Virginia law, an individual's noncompliance with a safety
regulation is not negligence per se, but, rather, as the district
court found in this case, it is at most some evidence of
negligence. See Waugh v. Traxler, 412 S.E.2d 756, 759-60 (W. Va.
1991) (holding that a violation of a safety statute is prima facie
negligence and not negligence per se); Miller v. Warren, 390 S.E.2d
207, 208-09 (W. Va. 1990) (explaining that noncompliance with a
fire code or similar regulation constitutes no more than prima
facie negligence). The appellant's hypothesis that a failure to
comply strictly with the Handbook provisions constitutes negligence
per se under West Virginia law is, therefore, legally incorrect.
 Third: The appellant's fallback position is no more
fruitful. She claims that, even if the district court applied an
appropriate legal standard, it committed clear error in failing to
find Eldridge negligent. This claim, although couched in the idiom
of clear-error review, is no more than a thinly-veiled invitation
to have us substitute our collective judgment for that of the
district court. We decline the invitation.
 Judge O'Toole heard fifteen days of testimony, much of it
pointing in different directions. Having carefully combed the
record, we are satisfied that he had before him competent evidence
that Eldridge substantially complied with the obligations imposed
by the Handbook. The evidence supports (though admittedly it does
not compel) findings to the effect that Eldridge exercised due
diligence in obtaining relevant information concerning aeronautical
and weather conditions and that he provided a reasonably complete
pre-flight briefing to Jackson on the morning of take-off. SeeJackson, 983 F. Supp. at 280; see also Davis v. United States, 824
F.2d 549, 552 (7th Cir. 1987) (describing the information that must
be assembled for a pre-flight briefing). This data included
current and future weather trends and unusual weather activity in
the areas along Jackson's anticipated path of flight. See Jackson,
983 F. Supp. at 280-81. Contrary to the appellant's claim that a
flight services specialist must issue specific weather advisories
to a pilot in haec verba, the law only requires a weather briefer
to interpret, translate, and convey in summarized form relevant
weather information. See Moorhead v. Mitsubishi Aircraft Int'l,
Inc., 828 F.2d 278, 282 (5th Cir. 1987); see also Jackson, 983 F.
Supp. at 280 n.10 (reprinting Handbook instruction: "Do not read
individual weather reports or forecasts unless, in your judgment,
it is necessary to emphasize an important point or unless
specifically requested to do so by the pilot.").
 In short, the law allows a weather briefer a certain
degree of latitude in transmitting weather information to a pilot. 
The evidence of record here adequately supports the district
court's conclusion that Eldridge used this latitude in a
permissible fashion by giving Jackson a comprehensive forecast and
accurately summarizing all pertinent weather advisories. In
particular, Eldridge informed Jackson that he could expect icing
conditions at his planned altitude from the eastern half of
Kentucky to West Virginia, see Jackson, 983 F. Supp. at 280, and
warned of "patchy precipitation," "light snow showers" (which,
coupled with gusting winds, would make it appear as if it were
"snowing sideways"), and near-freezing conditions at the Charleston
airport, see id. at 281. This constituted, at the very least,
substantial compliance with the regimen specified by the Handbook. 
No more was exigible. See Davis, 824 F.2d at 554-55; Barbosa v.
United States, 811 F.2d 1444, 1447 (11th Cir. 1987); cf. Delta
Airlines, Inc. v. United States, 561 F.2d 381, 390 (1st Cir. 1977)
(holding that "a substantial and unjustified failure" to follow FAA
safety provisions is a persuasive indication of a lack of due
care).
 Fourth: Under West Virginia law, a plaintiff is not
entitled to recover in a wrongful death suit if her decedent's
negligence equals or exceeds the defendant's. See Bradley v.
Appalachian Power Co., 256 S.E.2d 879, 885 (W. Va. 1979)
(elucidating comparative negligence doctrine); see also W. Va. Code
 55-7-5 (1994) (stipulating that a wrongful death action may
succeed only if the party injured would have been entitled to
recover damages had death not ensued). The appellant asseverates
that the trial court clearly erred in ranking Jackson's negligence
as greater than the combined negligence of the three main
government actors. Because the district court supportably found
that neither Eldridge nor Christine Garcia was negligent, this
asseveration reduces to a naked claim that the negligence of
Ulanch, the Charleston-based air traffic controller, was more a
factor in the crash than the negligence of the decedent.
 Judge O'Toole found both men negligent: Ulanch for
neglecting to transmit no fewer than six weather advisories that
warned of icing conditions as Jackson approached the Charleston
Airport, see Jackson, 983 F. Supp. at 282; and Jackson both for
failing sufficiently to inquire whether dangerous conditions near
Charleston persisted and for braving weather conditions that he
knew his aircraft could not withstand, see id. at 282-83. In the
court's estimation, Jackson's discerned negligence outweighed
Ulanch's discerned negligence. See id. at 283. Consequently, the
court entered judgment for the United States. See id. at 284.
 We cannot say that the trial court's comparative
negligence analysis was "simply wrong." State Police Ass'n, 125
F.3d at 5. As a pilot, Jackson had the primary responsibility for
the safety of his aircraft. See Cappello v. Duncan Aircraft Sales,
79 F.3d 1465, 1469 (6th Cir. 1996); Davis, 824 F.2d at 552; seealso 14 C.F.R. 91.3 (1998). Awareness of facts and circumstances
that pertain to the safe operation of the aircraft is paramount,
and a pilot, exercising due care for his own safety, must endeavor
constantly to update weather information. See Davis, 824 F.2d at
551. Eldridge's initial briefing, which mentioned icing conditions
near Charleston, should have served as a red flag to a wary pilot. 
At a bare minimum, this initial briefing put Jackson on inquiry
notice and triggered an affirmative duty to inquire about whether
the hazardous conditions persisted. See Somlo v. United States,
416 F.2d 640, 645 (7th Cir. 1969) (holding that it was a pilot's
duty "to inquire whether icing was still a factor" once forewarned
of icing conditions). Nothing in the record suggests that Jackson
fulfilled this duty.
 Relatedly, the record bears out the district court's
determination that Jackson failed to take reasonable steps to avoid
weather conditions that he knew his single-engine Mooney M-20M
airplane could not withstand. Jackson was an experienced pilot who
had owned the aircraft for some time. The Mooney flight manual
explicitly warned that the M-20M was not equipped for flight in
icing conditions. The lower court supportably could have found 
as, indeed, it did that Jackson's disregard of this warning not
only transgressed an applicable FAA regulation, see 14 C.F.R. 
91.9 (1998) (requiring that an aircraft be operated in compliance
with limitations specified in its flight manual), but also ran
counter to common sense. Flying an airplane contrary to the safety
provisions stipulated in the applicable flight manual is itself a
sufficient predicate for a finding of negligence. See Hoban v.
Grumman Corp., 717 F. Supp. 1129, 1136-37 (E.D. Va. 1989).
 In determining the relative negligence of Jackson and
Ulanch, the trial court also properly considered the degree to
which Jackson had been forewarned of the continued presence of
icing conditions in the Charleston area. While approaching the
Charleston airport, Jackson radioed Air Traffic Control and
acknowledged that he had received weather information from
Charleston's Automatic Terminal Information System, a continuous
twenty-four hour source of current weather information. Equally as
important, several pilots in the Charleston area had transmitted
reports warning of icing conditions, and at least one of these
reports was transmitted on the same radio frequency Jackson earlier
used to contact Charleston Air Traffic Control. See Jackson, 983
F. Supp. at 278. The court inferred that Jackson heard the weather
reports from other pilots warning of icing conditions in ample time
to take corrective action. See id. Under the circumstances, the
inference was reasonable, particularly given the regulatory
requirement that pilots must maintain a continuous watch on an
"appropriate radio frequency" during flight. 14 C.F.R. 91.183
(1998).
 It is both good law and sound logic that a pilot bears a
responsibility to circumvent dangerous weather conditions that are
perceptible through his own senses. See Spaulding v. United
States, 455 F.2d 222, 226-27 (9th Cir. 1972). This includes the
duty to interpret weather conditions that are confronted en route,
evaluate their significance based on past experiences, and avoid
inappropriate courses of action. See Moorhead, 828 F.2d at 283. 
The lower court concluded that Jackson did not fulfill this
obligation. See Jackson, 983 F. Supp. at 282-83. This conclusion,
too, is supportable. Jackson was a very experienced pilot who had
logged nearly 500 hours of flight time and was familiar with the
warning signs for icing conditions. See id. at 275. Indications of
icing conditions unsuitable for flight in a single-engine Mooney M-
20M surrounded Jackson as he neared Charleston, including near-
freezing temperatures and variable amounts of precipitation. 
Still, Jackson took no affirmative action to avoid the looming
peril. These, and other, facts fully supported a finding that a
pilot of Jackson's experience should have recognized the danger of
proceeding single-mindedly through perilous prospects.
 To be sure, Ulanch's negligence also was starkly
apparent. We do not minimize his failings. Comparing the relative
fault of two negligent actors, however, is an exercise better
committed to a trial judge, who has an opportunity to see and hear
the witnesses, than to the court of appeals. Only rarely and in
extremely compelling circumstances will an appellate panel, from
the more restrained perspective afforded by a cold record, tinker
with the trier's weighing of relative fault. We have no occasion
to essay so unusual a step today. Taking into account the totality
of the evidence, we cannot say that the trial court clearly erred
in determining that Jackson's negligence equaled or exceeded that
of Ulanch.
 We need go no further. The other arguments raised by
the appellant are plainly insufficient, adequately answered in the
district court's memorandum opinion, or both. Hence, we uphold the
district court's determination that the appellant is not entitled
to recover damages under the FTCA.

Affirmed.