# United States Court of Appeals
## For the First Circuit

No. 11-2414

UNITED STATES OF AMERICA,

Appellee,

v.

MANI M. BATCHU,
a/k/a "MARK TAYLOR,"

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Claudia Leis Bolgen, with whom Bolgen & Bolgen was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for the appellee.

July 18, 2013

**KAYATTA, Circuit Judge.** Mani Batchu was a 29-year-old doctor and specialist in adolescent psychiatry when he pursued a sexual relationship with a 15-year-old girl. Two states charged him with statutory rape and two courts ordered him to cease contact with the girl. Batchu continued to pursue the relationship until federal authorities took him into custody.

Batchu pled guilty to five federal charges and was sentenced to 365 months' imprisonment followed by 360 months' supervised release. He now appeals that sentence. For the reasons set out below, we reject Batchu's arguments and affirm the district court's lengthy sentence as defensible in this case involving a skilled and apparently undeterrable predator who caused great harm to the victim and her family.

## I. Background

Because Batchu pled guilty to the charges against him and now challenges only his sentence, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

At the time of the criminal conduct at issue, Batchu was a 29-year-old osteopathic physician and a resident in psychiatry at the University of Illinois in Chicago. [SA 6, 9.] His special interest was adolescent psychiatry. [A 285.]

In August 2008, Batchu met "Minor A," a 15-year-old girl from Massachusetts, on an internet dating website. [A 282.] Batchu used a fake name and a fake photograph of himself to interact with the girl, claiming first to be 17 years old and later to be 21 years old. [SA 10.] Minor A initially said that she was 18 years old, but later admitted to Batchu that she was only 15. [SA 10.]

Over the next several months, Batchu and Minor A began a long-distance relationship, communicating via instant messages, phone calls, text messages, and emails. [SA 10.] Batchu also mailed gifts and cards to Minor A at her home. [SA 10.] By January 2009, the two were routinely speaking on the telephone for several hours each day. [SA 10.] Batchu told Minor A that he was in love with her and that he wanted to marry her. [SA 10.] He said that he did not care that she was only 15. [SA 10.]

On May 1, 2009, Batchu flew from Chicago to Connecticut, rented a car, and drove to Minor A's house in Massachusetts. [SA 11.] He then brought her back to his hotel in Connecticut, where the two had sex. [SA 11.] Batchu was fully aware at this time that Minor A was only 15 years old. [SA 11.] Five days later, Minor A's parents discovered what had happened and reported it to the local police department. [SA 11.] When Minor A let Batchu know that her parents had told the police about him, he declared that he did not care and that nothing would come between them. [SA

11.]  The two remained in contact over the internet and telephone. [SA 11.]

On May 23, Batchu drove from Chicago to Minor A's home town in Massachusetts.  [SA 12.]  He met her at a conservation area and there they engaged in intimate sexual contact short of intercourse.  [SA 12.]  A short while later, they were interrupted by Minor A's older brother.  Batchu fled in his car.  [SA 12.]

Within 24 hours, the Eastern Hampshire County District Court in Massachusetts issued a temporary restraining order demanding that Batchu cut off contact with Minor A.  [SA 12.]  The order was served on Batchu that same day and made permanent two days later.  [SA 12.]  On June 8, the Eastern Hampshire County District Court issued an arrest warrant for Batchu based on a complaint alleging that he had statutorily raped Minor A on May 23. [SA 12-13.]  He was arrested in Chicago the next day and confessed to police that he had a sexual relationship with Minor A.  [SA 13.]

Batchu's computer was seized and a subsequent search of the hard drive turned up: videos of Minor A that Batchu recorded while webchatting with her in which she displays her genitals and masturbates; videos of two other unidentified females ("Victim B" and "Victim C") that Batchu recorded while webchatting with them; hundreds of videos depicting young females engaged in sexually explicit conduct; and web searches with search terms indicative of

-4-

child pornography (e.g., "preteen," "lolita," "kiddy," and "pthc"[1]). [SA 15-16.]

On June 24, Batchu appeared in Eastern Hampshire District Court in Massachusetts on the statutory rape charges. [SA 13-14.] He was released on bail on the condition that he cease contact with Minor A. [SA 14.] The following day, Batchu appeared in Connecticut Superior Court and was charged with three counts of sexual assault in the second degree in connection with his statutory rape of Minor A on May 1. [SA 14.] He was again released on bail, this time on the condition that he have no contact with any child under the age of 18. [SA 14.]

Batchu was undeterred. He remained in contact with Minor A, communicating with her daily over the phone and internet for hours on end. [SA 17.] On July 22, Minor A's family went to Florida on vacation. [SA 17.] Tipped off to the family trip by Minor A, Batchu flew to Florida, rented a car and a hotel room, and surreptitiously met with Minor A several times over the next few days, repeatedly engaging in sexual intercourse with her. [SA 17-18.] Before he returned to Chicago, Batchu told Minor A that she could refuse to testify against him and that if anyone asked she should deny ever having had sex with him. [SA 18, A 293.]

---

[1] Batchu's PSI Report explains that "pthc" ("preteen hardcore") is an abbreviation used by pedophiles to denote child pornography. [SA 15.]

The two continued to communicate remotely until August 3, when Batchu flew to Connecticut for an appearance in Superior Court on his sexual assault charges for the May 1 encounter. [SA 18-19.] Instead of remaining in Connecticut, Batchu rented a car and drove to meet Minor A in a shopping mall in Massachusetts, where the two engaged in sexual intercourse inside a fitting room at a department store. [SA 19.] They were walking together through the mall when they encountered members of Minor A's family, who had called the police. [SA 19.] Batchu was arrested for violating the restraining order barring him from contact with Minor A. A search of his car recovered a computer and a flash memory drive, which contained additional sexually explicit video files of Minor A that Batchu had surreptitiously recorded while webchatting with her, photographs of Batchu and Minor A kissing in Florida, and hundreds of images of child pornography. [SA 19-21.]

Batchu was subsequently indicted on eight federal counts related to his sexual conduct with Minor A. [A 24-32.] On May 7, 2011, he pled guilty to five of them: one count of transporting a minor in interstate commerce with the intent that she engage in criminal sexual activity, 18 U.S.C. § 2423(a), three counts of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct, 18 U.S.C. § 2423(b), and one count of using a facility of interstate commerce to entice a minor to engage in criminal sexual activity, 18 U.S.C. § 2422(b). The plea agreement

-6-

stipulated that Batchu's offense level would be increased by two because he had willfully obstructed the administration of justice. [A 241.]  See U.S.S.G. § 3C1.1.  Batchu reserved the right to contest any increase of his offense level based on the videos of Victims B and C found on his computer solely on the ground that neither Victim B nor Victim C was a minor.  [A 241-42.]  See U.S.S.G. §§ 2G2.1(d)(1), 3D1.2.  Batchu also agreed not to appeal or challenge any sentence of imprisonment of 293 months or less. [A 246.]

At Batchu's sentencing hearing, the district court used the United States Sentencing Guidelines to calculate a recommended sentence.  The base offense level for Batchu's crimes was 32.  See U.S.S.G. § 2G2.1(a).  Six levels of enhancement were uncontested: two for the fact that Minor A was between the ages of 12 and 16, see id. § 2G2.1(b)(1)(B), two because the offense involved the commission of a sexual act, see id. § 2G2.1(b)(2)(A), and two because Batchu used the internet to communicate with Minor A and entice her into a sexual relationship, see id. § 2G2.1(b)(6).  [A 241-42.]  As stipulated in the plea agreement, the government also sought two levels of enhancement because Batchu obstructed justice, see id. § 3C1.1.  [SA 241.]  Batchu objected to the obstruction of justice enhancement--despite the fact that he had stipulated to its application in his plea agreement--and his objection was denied. [A 360-73.]  Finally, and also as stipulated in the plea agreement,

the government relied on the videos of Victim B and Victim C to seek additional enhancement for "relevant conduct" "committed . . . during the commission of the offense of conviction." Id. §§ 1B1.3(a)(1), 3D1.2(d). Batchu objected to this enhancement on the grounds he reserved in the plea agreement, claiming that neither female shown in the videos was under age 18. [A 348-350.] The district court found that Victim C was under 18 and enhanced his sentence accordingly. [A 354-359.] These enhancements yielded an adjusted offense level of 42. [SA 25-26.]

Finally, because Batchu had accepted responsibility for his crime, the district court deducted two points from his offense level, see id. § 3E1.1, resulting in a combined total offense level of 40. Together with Batchu's criminal history category of I, this figure yielded a recommended Guidelines sentence of 292 to 365 months. [A 377.]

The court then heard arguments from the parties about an appropriate sentence for Batchu. The government attorney and Minor A's parents spoke first. They emphasized Batchu's deliberate and criminal exploitation of Minor A, as well as his persistent disregard for the law despite repeated attempts by her family members and by multiple law enforcement agencies to deter him from pursuing the relationship. [A 377-389.] They also recounted the trauma that Batchu had inflicted on Minor A and her entire family. [A 380-407.] Minor A missed a year of school. [A 390.] Her

-8-

prolonged and continuing depression still precluded her from functioning normally over two years after her encounter with Batchu commenced. [A 390-391.] The entire incident was seen by the family as an important contributing factor in the suicide of Minor A's older brother, her unsuccessful protector. [A 391.]

Batchu spoke next. He apologized to Minor A and to her family for his actions, and he reflected on how he had betrayed the values instilled in him by his own parents. [A 410-416.] He closed by comparing himself to the jailed Indian leader Mahatma Gandhi. [A 422-23.][2] After considering the sentencing factors enumerated in 18 U.S.C. § 3553(a), the district court imposed a top-of-the-guidelines sentence of 365 months on each count, to run concurrently, followed by 360 months' supervised release. [A 429.] This appeal followed.[3]

## II. Analysis

## A. The Two-Level Enhancement for Batchu's Conduct with Victim C.

Batchu challenges the two-level enhancement of his offense level based on the video of Victim C. He offers three different arguments to that end. First, he claims (as he did before the district court) that Victim C was not under the age of

---

[2] Batchu was born in India but moved to the United States as a child and became a naturalized American citizen. [SA 6, 31.]

[3] Because Batchu received a sentence longer than 293 months, the appellate waiver in his plea agreement does not apply. [A 246.] See United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007).

18.  Second, he argues (for the first time) that the video of Victim C was not sexually explicit.  Finally, he asserts (also for the first time) that his actions with respect to Victim C were not "relevant conduct" to his crimes of conviction within the meaning of Guideline § 1B1.3, and so the district court should not have considered them as part of his sentence calculation.  The government had the burden of proving each of these facts by a preponderance of the evidence.  See United States v. Hoey, 508 F.3d 687, 690 (1st Cir. 2007).

At Batchu's sentencing hearing, the district court heard argument from both sides on whether Victims B and C were under the age of 18.  If either girl was under 18, then Batchu's actions with respect to her would be counted toward his total offense level as though it was contained in a separate count of conviction.  See U.S.S.G. §§ 2G1.3(d)(1), 2G2.1(d)(1), 3D1.4.  The underlying calculations were quite complex, but in short, Batchu's total offense level would have been raised by three if the court had found that both girls were under 18, by two if just one of them was under 18, and not at all if neither girl was under 18.  [SA 26-27, A 358-59.]  Having viewed the videos in question, the district court was unable to determine with certainty the age of Victim B, but found that it could conclude with confidence that Victim C was under 18.  [A 354-359.]  Batchu objected to that factual finding, but raised no other objections to the court's use of the video of

Victim C.  The court relied on the video of Victim C to raise Batchu's offense level by two points.  [A 358.]

When a defendant has preserved an objection to a district court's calculation of a recommended Guidelines sentence, we review de novo the court's interpretation and application of the Sentencing Guidelines and review for clear error the court's factual findings.  See United States v. Tavares, 705 F.3d 4, 24 (1st Cir. 2013).  Here, the parties agree that Batchu preserved his challenge to the court's finding that Victim C was under 18, and so we will review that factual finding for clear error.  The parties also agree that Batchu has raised his second two objections for the first time on appeal.  While there is a question whether these objections have been waived by the plea agreement, see United States v. Turbides-Leonardo, 468 F.3d 34, 37-38 (1st Cir. 2006); United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993), the government agrees with Batchu that we should review the objections under the plain error test.  See Turbides-Leonardo, 468 F.3d at 37-38; Morillo, 8 F.3d at 872; Fed. R. Crim. P. 52(b).[4]  Without deciding the issue, we accept the government's agreement to defendant's benefit.

_____

[4] Under the plain error standard of review, the defendant must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

### 1. The age of Victim C.

Batchu's first argument is that the district court clearly erred in its finding that Victim C was less than 18 years old. The district court explained its reasoning as follows:

> She's very young, very young. She could easily be 14. She could possibly have been 16. She is definitely not 18, and I can say that with confidence. I don't think that any fair-minded person looking at the video that involves victim C could conclude that that young lady is 18 years or older . . . . There might be a debate as to whether she's under 16, but there's no question that she's under 18. I'm also assisted, if that's the word, in making this evaluation by the fact that . . . there are four videos that we have of Mr. Batchu interacting with victim C, and so I have a much better opportunity to gauge her level of physical maturity and her level of frankly childish conduct during the course of the video. She's a very young girl both physically and in terms of how she is behaving on the video.

[A 355-56.] As we mentioned earlier, the district court's finding that Victim C was under 18 resulted in a two-level increase of Batchu's offense level under Guideline § 3D1.4(a).

In seeking reversal of this factual determination by the sentencing judge, Batchu argues that the judge could not make a finding that Victim C, a post-pubescent female, was less than 18 years old without the assistance of expert testimony. We view this argument as a challenge to the sufficiency of the evidence. Batchu relies on United States v. Katz, 178 F.3d 368 (5th Cir. 1999) (per curiam), but Katz merely held that the potential need

-12-

for expert testimony "must be determined on a case by case basis" and that, in the circumstances of that case, expert testimony "may well be necessary." Id. at 373; see also United States v. Riccardi, 405 F.3d 852, 870 (10th Cir. 2005) (allowing jury to determine without expert opinion that two males photographed while engaged in oral sex were under the age of 18). For six reasons, we conclude that, even though the individual shown in the videos is post-pubescent, this is not a case that requires expert testimony.

First, the district court was not confronted with the task of discerning age on the basis of a single or even several static images. Rather, the court viewed videos in which Victim C moved about a room and spoke back and forth with Batchu. Her attire, gait, demeanor, bearing, expressions, and voice were all subject to assessment, as too was the substance of her conversations with Batchu. An assessment of age based on such a multiplicity of indicators is one often made by ordinary people in their day-to-day experience.

Second, we have reviewed the four videos ourselves. Although Victim C appears to be post-pubescent, based on her physical appearance alone one would be surprised but not incredulous to discover that she was as old as 18. More importantly, her bearing, demeanor, behavior, speech, and mannerisms are consistently quite immature in a way that does not seem feigned. Nor is there any evidence at all suggesting that she

-13-

is an adult model or actress posing as a ninth grader. "No more than 16, and very possibly 14," would be a common and fair estimate of her age.

Third, Batchu points to no expert testimony or study gauging the accuracy of such assessments of age by ordinary people based on the type of information available in this case. Rather, and ironically, Batchu asks us to rely on our own experience, unaided by expert advice, as justification for a new rule that such assessments regularly made in everyday life and in courtroom testimony have suddenly become so unreliable as to be deemed rank speculation. Neither our own experience nor our regard for the experience and judgment of others allows us to craft from whole cloth such a rule.

Fourth, even in assessing the more technical subject of whether a sexually explicit image depicts a real or computer-generated child, we have not required expert evidence on the ultimate question. See United States v. Rodriguez-Pacheco, 475 F.3d 434, 441-44 (1st Cir. 2007). The fact that we do not require experts for that fairly technical determination suggests that we should similarly not require the government to provide an expert witness for an assessment frequently and routinely made in day-to-day experience. See United States v. Cameron, 762 F. Supp. 2d 152, 163-64 (D. Me. 2011), aff'd in part, rev'd in part on other grounds, 699 F.3d 621 (1st Cir. 2012).

Fifth, because the factual determination of age at issue in this case arose at sentencing, the district court need have found that Victim C was a minor only by a preponderance of the evidence. See Hoey, 508 F.3d at 690. We are not confronted with the question of whether expert testimony is required (or able) to prove beyond a reasonable doubt the minority of an unknown, post-pubescent individual appearing in a video.

Sixth, the district court took into consideration the imprecise nature of its determination and did not seek to make close calls. In a proceeding where the government bore the burden of establishing that Victim C was "more likely than not" a minor, the district court found that Victim C was definitely under 18, and likely 16 or younger. At the same time, the district court declined to conclude that Victim B was under 18. In short, the district court did not attempt to draw fine distinctions that might be deemed facially implausible or inconsistent with common experience.

As is the case with many judgments of fact, we deal in estimates and likelihoods, not certainty. On clear error review, we simply uphold the district court's conclusion that Victim C, more likely than not, was under 18 years of age. See Jackson v. United States, 156 F.3d 230, 233 (1st Cir. 1998).

**2. Sexually explicit conduct.**

The plea agreement did not reserve for appeal the argument that the video of Victim C did not include "sexually explicit conduct." See U.S.S.G. § 2G2.1. Nor did Batchu argue to the district court that it must determine the existence of "sexually explicit conduct" using the factors articulated in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir. 1987), an argument he now makes on appeal. Again, we bypass any issue of waiver and apply plain error review.

The statute defines "sexually explicit conduct" as, inter alia, the "lascivious exhibition of the genitals or pubic area." 18 U.S.C. § 2256(2)(A)(v). We have considered claims of error in the application of this definition in United States v. Amirault, 173 F.3d 28 (1st Cir. 1999), and United States v. Frabizio, 459 F.3d 80 (1st Cir. 2006). Under these cases, there was no error here, let alone plain error.

First, it is defendant who is in error in relying on the Dost factors as dispositive. We have been clear that the Dost factors are problematic. In Frabizio, we emphasized that the factors are not "the equivalent of," nor do they "establish[] the limits of[,] the statutory term 'lascivious.'" 459 F.3d at 87. We noted that Dost has "fostered myriad disputes that have led courts far afield from the statutory language," id. at 88, including

disputes about what specific factors mean and how many factors must apply to qualify an image as "lascivious." Id. at 88-89. We made a similar point in Amirault, stating that the factors "are neither comprehensive nor necessarily applicable in every situation" and that "[t]he inquiry [into the 'lascivious exhibition' question] will always be case-specific." 173 F.3d at 32. Since defendant's argument is framed almost exclusively in terms of the Dost factors, it necessarily fails the plain error test.

Further, the evidence supports a finding that the Victim C videos contain sexually explicit conduct, or at least such a conclusion cannot be said to be plainly erroneous. In the videos reviewed by the district court, Victim C removes her shirt and shorts and appears only in her bra and bikini-type underpants. On one occasion, in response to Batchu's repeated requests, she bends over a chair and presents her buttocks and thighs to the screen, allowing the camera to focus briefly on her barely-clothed crotch from behind. At another point, Victim C stands in front of the camera while Batchu coaxes her to pull aside her bra so that her breasts are visible. Batchu's tone vacillates between what might fairly be described as feigned objectivity and lechery.

Any error the district court made on this point would not have been "obvious and clear" as required for Batchu to prevail under the plain error standard of review. See United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002) ("If there was error, it

was not plain, given the unsettled state of the law."); see also United States v. Phaneuf, 91 F.3d 255, 263-64 (1st Cir. 1996); United States v. Olano, 507 U.S. 725, 734 (1993).

### 3. Relevant conduct.

On plain error review, we also reject Batchu's claim that the video of Victim C should not have been considered "relevant conduct" to his crime of conviction.

When the district court calculated Batchu's recommended sentence under the Guidelines, it was permitted to consider any act or omission he committed "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. §§ 1B1.3(a)(1), 3D1.2(d). There was no allegation that Batchu made the video of Victim C in order to prepare for his liaisons with Minor A or to evade responsibility for those crimes. Accordingly, for the district court to enhance Batchu's sentence based on the video of Victim C, the video must have been made "during" his relationship with Minor A.

At the sentencing hearing, the issue of the video's date of production never came up because Batchu's plea agreement stipulated that his sentence would be enhanced based on the video, subject only to his contention that he would contest that Victim C was under 18. [A 242.] Neither side offered evidence as to the video's date of production. The forensic examination method used

to extract the file from Batchu's computer did not indicate its date of creation. We can infer that the video was made before Chicago police discovered it on Batchu's laptop on June 9, about six weeks before he traveled to Florida to meet with Minor A, but no other information is available to us. We therefore have a record that is silent on a variable central to determining whether conduct is relevant conduct properly considered in sentencing.

We confronted a similar situation in United States v. Turbides-Leonardo, 468 F.3d 34. In that case, the defendant's base offense level was enhanced because he had been previously convicted of a drug trafficking offense for which the sentence imposed exceeded 13 months. See id. at 36-37; see also U.S.S.G. § 2L1.2. The defendant did not object to this finding at his sentencing hearing, but on appeal he claimed that it was made in error because there was no information in the record to suggest that the conduct underlying his prior conviction--a controlled substance violation-- constituted drug trafficking. See Turbides-Leonardo, 468 F.3d at 37. We determined that the defendant waived any objection and, in any event, that any challenge failed on plain error review because the defendant had failed to demonstrate that "the probability of a different result [was] sufficient to undermine confidence in the outcome of the proceeding." Id. at 39-40 (quoting United States v. Antonakopoulos, 399 F.3d 68, 78 (1st Cir. 2005)) (internal quotation mark omitted). We explained:

-19-

> His argument, taken in its most attractive light, presents us with an unknown variable: the contents of the record of the prior conviction. He does not claim that this record, if obtained, would show that his prior offense was other than a drug trafficking offense; he does not claim that the record would be either ambiguous or inscrutable as to this point; and, finally, he nowhere asserts that, factually, his prior offense conduct would fall outside the . . . definition of a drug trafficking offense. Rather, he claims only that . . . his prior offense--about which we know next to nothing--would not *necessarily* encompass all the elements needed to constitute a drug trafficking offense . . . .

Id. at 40. Because Turbides-Leonardo failed to indicate what the record of conviction might contain, we concluded that he could not show a reasonable probability that the district court's error had affected his substantial rights. Id.; see also United States v. Davis, 676 F.3d 3, 9-10 (1st Cir. 2012).

Batchu's argument shares the same flaw. Batchu stipulated to the enhancement of his sentence based on the Victim C video, aside from contesting the girl's age. On appeal, he now claims that the record did not establish that he recorded the video during the commission his offense of conviction, but he has given us no reason to believe that there would be any probability of a different result if we reversed and remanded for further fact-finding. Like Turbides-Leonardo, Batchu presents us with an "unknown variable"--in this case, the date he created the Victim C video. Turbides-Leonardo, 468 F.3d at 40. And, like Turbides-Leonardo, Batchu does not point to any evidence suggesting that

further fact-finding would show that he produced the video outside the relevant time frame.  See id.

Unlike Turbides-Leonardo, however, Batchu does argue that the record will inevitably be "ambiguous or inscrutable" on this point.  Id.  He emphasizes that the forensic examination of his computer did not establish when he produced the Victim C video, and he claims that no amount of further investigation could have determined that either.

We disagree.  If Batchu had raised this issue before the district court, then the government might have been able to identify the video's production date through methods other than forensic analysis; for instance, by carefully following leads suggested by the content of the video itself or by determining when he first purchased a computer with webchatting capabilities.  Moreover, there is nothing in the record to substantiate Batchu's claim that it would have been impossible for further forensic investigation to identify the date he created the video.  The record was not inevitably silent on this point--it is only silent because Batchu failed to raise the issue to the district court.

Therefore, Batchu has placed us in precisely the same position as we were in with regard to Turbides-Leonardo.  We are "left to guess" whether a further investigation prompted by a timely objection would have found that he made the video before he began his relationship with Minor A.  Id. at 40.  In these

circumstances, even if Batchu has not waived any argument on this issue, he cannot meet his burden under plain error review to establish prejudice as a result of any error committed by the district court. "With no articulation, let alone substantiation," of what a further investigation into the production of the video might reveal, "there is no way for the appellant to show a reasonable probability that he would be better off from a sentencing standpoint had the district court not committed the claimed . . . error. It follows inexorably that the appellant has not satisfied the third prong of the plain error test." Id. at 40 (citing Jones v. United States, 527 U.S. 373, 394-95 (1999)).[5]

**B.    The Two-Level Enhancement for Obstruction of Justice.**

The government cited three possible grounds for a two-level obstruction of justice enhancement at sentencing: Batchu's continued pursuit of Minor A in defiance of court orders; his filing of false affidavits in connection with his motion to

---

[5] This is not to say that a record silent on a point for which the prosecution bears the burden of proof can never result in a finding of plain error. For example, in United States v. Torres-Rosario, 658 F. 3d 110 (1st Cir. 2011), we found plain error due to the fact that the record was silent on whether a prior assault and battery for which the appellant was convicted was a crime of violence, id. at 116-17, a finding that was necessary in order for the conviction to stand as a necessary predicate for a substantially enhanced sentence under the Armed Career Criminal Act, id. at 115. In that case, unlike here, the restricted types of evidence that the government could have offered to carry its burden were such that the passage of time due to the defendant's failure to object in the district court posed no potential for prejudice to the government.

suppress; and his instruction to Minor A that she should "lie if there was an inquiry from law enforcement that the two of them had had sexual relations." [A 360-362.]

The third stated ground for a two-level enhancement (counseling Minor A to cover for him) is clearly adequate by itself to require application of the enhancement. See U.S.S.G. § 3C1.1, comment n.4(B); United States v. Tracy, 989 F.2d 1279, 1288 (1st Cir. 1993) (citing United States v. Dunnigan, 507 U.S. 87, 97-98 (1993)). Nor does Batchu argue otherwise. It is also clear that the record amply supports a finding that Batchu did indeed seek to obstruct justice by trying to get Minor A to lie for him. Batchu's own lawyer noted that the basis for the obstruction allegation included the statement of Minor A herself that "when it came down to it for me to talk to the police, [Batchu] got me to lie for [him]." [A 363.] Batchu is therefore reduced to arguing that the district court did not adopt this ground as one of the justifications for the two-level enhancement. The transcript, though, is clear to the contrary. The district court expressly stated that the enhancement should apply "for all the reasons that [the government attorney] just stated." [A 373.] Further observed the district court, "even if he did not explicitly say it . . . there was a concession that [Batchu] said something that [Minor A] didn't have to testify against him. Well, I think the message is obvious." [A 373.]

-23-

In view of the foregoing, we need not address Batchu's challenges to the other grounds supporting the two-level enhancement. Even if the district court erred in relying on both of those ground (and we do not suggest that it did), the presence of an adequate and fully sufficient ground for the enhancement renders any such possible error harmless. United States v. Rodriquez, 525 F.3d 85, 108-09 (1st Cir. 2008).

**C.    The Reasonableness of the 365-Month Sentence.**

Batchu also contends that his sentence was both procedurally and substantively unreasonable. First, he claims that the district court committed procedural error by failing to evaluate and explain its chosen sentence in light of the 18 U.S.C. § 3553(a) sentencing factors and Batchu's arguments for a downward departure from the recommended Guidelines sentence. Second, he argues that his 365-month sentence is substantively unreasonable given the nature of the crime and his personal circumstances.

We begin with Batchu's procedural objection. Were this objection preserved, we would review for abuse of discretion. Because Batchu failed to object on this ground at sentencing, we instead review only for plain error. See United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012).

Batchu argues that the district court failed to consider the § 3553(a) factors and that it failed to adequately explain his sentence in light of those factors. Neither contention has merit.

-24-

"A sentencing court is not obliged . . . to specifically address all of the section 3553(a) factors in its explanation, nor to give each of the factors 'equal prominence' in its determination." United States v. Zapata, 589 F.3d 475, 487 (1st Cir. 2009) (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)). Because "the relative weight of each factor will vary with the idiosyncratic circumstances of each case," we permit sentencing courts "to adapt the calculus accordingly." Dixon, 449 F.3d at 205. All we require is that they "specifically identify some discrete aspect of the defendant's behavior and link that aspect to the goals of sentencing." United States v. Vazquez-Molina, 389 F.3d 54, 58 (1st Cir. 2004), vacated on other grounds, 544 U.S. 946 (2005).

In this case, the district court ably performed its procedural duty. The court emphasized that it had "not seen a more determined course of criminal conduct in 28 years on the bench" and that Batchu's conduct toward Minor A "was pure exploitation of the ugliest sort." [A 431-32.] It rejected any "cultur[al] or other excuse," adding that Batchu had "a long way to go to get on the moral path that [he] claim[ed] to be on. A long way to go to self knowledge . . . ." [A 431.] The court found the apology "phony and narcissistic and self-justifying." [Id.] The court concluded that a top-of-the-guidelines sentence was "fully justified by the extreme version of this offense." [A 433.] The court also

specifically noted that it had considered the § 3553(a) factors, and its decision to focus on certain factors over others "'entailed a choice of emphasis, not a sin of omission' and 'is not a basis for a founded claim of sentencing error.'" United States v. Rodriguez, 525 F.3d 85, 110 (1st Cir. 2008) (quoting United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007)). As a whole, the court's explanation adequately took into account the relevant § 3553(a) factors, and demonstrated that a lengthy sentence was necessary for the proper reasons. The court committed no error on this front.[6]

Alternatively, Batchu claims that the district court unreasonably failed to consider his arguments for a downward departure from the recommended Guidelines sentence, including his record of community service, his stressful family circumstances at the time of the crimes, the cultural pressures on him to find a marriage partner, and the fact that he had fallen in love with Minor A. In reality, as we describe above, the district court considered and rejected all these arguments as either not credible or insufficient.

---

[6] Batchu claims that the court should have "specifically explained and addressed the § 3553(a)(1) factor of the 'history and characteristics of the defendant' and § 3553(a)(2) factor of why such a long sentence was 'just punishment.'" [Pl. Br. 35.] But as we have just recounted, the court's explanation of its sentence did specifically address both of these concerns.

-26-

Moving on to the substantive reasonableness of his 365-month sentence, Batchu argues that this prison term is far in excess of what would be necessary to punish him for his crimes. Batchu argues that he was guilty of only what he calls extremely poor judgment in pursuing a relationship with Minor A, that he has no criminal history, and that a 120-month sentence would have been sufficient to achieve the goals of punishment set out in § 3553(a).

When assessing a challenge to the substantive reasonableness of a sentence, "[w]e generally respect the district court's sentence so long as the court has provided a plausible explanation, and the overall result is defensible." United States v. Prosperi, 686 F.3d 32, 43 (1st Cir. 2012) (alteration in original) (quoting United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008)) (internal quotation marks omitted). We remember that "[t]here is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes." United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011). When the challenged sentence falls within the recommended Guidelines range, the defendant "must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons.'" United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)).

The record here paints Batchu as a relentless and highly dangerous child molester. He used his training in adolescent psychology to groom Minor A for sexual exploitation. Batchu deliberately turned Minor A against her own family, inflicting a degree of harm that is palpable on the record of the sentencing hearing. He went to great lengths to repeatedly sexually abuse Minor A despite two state prosecutions and multiple court orders demanding that he terminate his relationship with the child. The quantity of child pornography and Batchu's video performance with Victim C found on his computer belie any notion that his pursuit of Minor A was an isolated instance of "poor judgment."

Importantly, Batchu's destructive and relentless pursuit of a minor was not deterred by repeated warnings, court orders, and the virtual certainty of capture and imprisonment. On such a record, the district court did not err in determining that the long stay behind prison bars it ordered is required.

**D. The 360-Month Statutory Maximum on Counts Two, Three, and Four.**

Finally, Batchu notes that he was sentenced to concurrent terms of 365 months' imprisonment on each of the five counts of conviction [A 20-21], and argues that this sentence exceeds the statutory maximum on three of those counts. Batchu did not raise this objection in the district court and so we review only for plain error. See United States v. Hilario-Hilario, 529 F.3d 65, 76 (1st Cir. 2008).

Batchu is correct that three of the counts on which he was convicted have a maximum punishment of only 360 months in prison, five fewer than his sentence. See 18 U.S.C. § 2423(b). However, the 365-month sentence he received was within the statutory limits on counts one and five, see 18 U.S.C. §§ 2422(b), 2423(a) (providing for a maximum punishment of life imprisonment), and so Batchu would spend no less time in prison even if we remanded for resentencing on counts two, three, and four. The district court's error on this point was therefore harmless and does not require reversal under plain error review. See United States v. Matos, 611 F.3d 31, 36-37 (1st Cir. 2010); United States v. Ziskind, 471 F.3d 266, 271 (1st Cir. 2006). Batchu's strained attempts to distinguish these cases require no express rejoinder.

### III. Conclusion

For the reasons stated, we affirm Batchu's sentence.

So ordered.

**- Concurring Opinion Follows -**

**TORRUELLA, J. (Concurring).** Although I agree with the outcome in this case, and most of its holdings, I would conclude otherwise on the need for expert testimony regarding the age of sexually abused victims where that finding cannot be documented by official records or by the testimony of the victim. I concur here, however, because the issue is before us at the sentencing stage, where the burden of proof is only by preponderance of the evidence, rather than beyond a reasonable doubt.