# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN RYAN HASTINGS,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2018

No. 336596
Jackson Circuit Court
LC No. 15-004918-FH

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Defendant, Jonathan Ryan Hastings, appeals as of right his jury trial convictions of distributing or promoting child sexually abusive material, MCL 750.145c(3), and using a computer to commit a crime, MCL 750.145d(2)(a). The trial court sentenced Hastings to 270 days in jail, plus three years' probation, with 1 day credit, plus fines and court fees. We affirm.

## I. BACKGROUND

This case centers on text messages that Hastings, a teacher and baseball coach at Jackson High School, exchanged with a 17-year-old student. At trial, the victim testified that Hastings initially reached out to her through social media, after which he provided his cellular telephone number and they began communicating by iMessage. According to the victim, they "started talking about . . . nude pictures and . . . meeting up after [she] graduated." Screenshots of the relevant messages showed that Hastings asked the victim to identify herself with a "too [sic: top] notch selfie…dare you[.]" Hastings added an emoji showing two eyes. When the victim obliged with a photograph of herself, Hastings responded, "Perfect human being," and sent a photograph of himself in a baseball uniform. They discussed the victim's family briefly, and Hastings observed that she received "all the best features" from her parents.

-1-

When Hastings asked for "another Nikki[1] pic[ture]," the victim responded, "I believe it's your turn[.]"  Hastings indicated that he would not send pictures and had already deleted her photograph, saying, "[I]t's my career on line nothing against you."

The victim encouraged Hastings to send something without his face in it, to which he replied, "You better send real spice if you want that from me."  The victim told Hastings, "I already have something in mind . . . [.]"  Although Hastings had not specifically requested a nude photograph, the victim, along with the friends with whom she was sharing their messages, deduced that was what Hastings wanted.  The victim planned to obtain a nude photograph from the Internet to forward to Hastings.

Hastings replied to the victim's text, stating, "Put [your] money where [your] mouth is[.]"  Hastings also demanded evidence the victim was deleting.  And after the victim sent Hastings screenshots showing that she had deleted the photographs already exchanged, Hastings sent the victim a clothed photograph of himself, to which she responded with numerous thumbs down emojis.  At that point, the following discussion took place:

> *Hastings*:  Set the pace debonaire
>
> *Hastings*:  Leaders go all out
>
> *Hastings*:  If you are so confident
>
> *Victim*:  Lol no I've already sent one I don't think you'll send one if I go again.
>
> *Victim*:  So we can take turns
>
> *Hastings*:  Dare you
>
> *Hastings*:  Home coming queens go first
>
> *Hastings*:  [Photograph of naked male chest]
>
> *Hastings*:  ……
>
> *Victim*:  Okay I'll go now since you finally went haha but if I go again you have to go again
>
> *Hastings*:  Yes but I want to the good stuff
>
> *Victim*:  Okay haha hold on

---

[1] Earlier Hastings had shared with the victim that he thought she looked like Nicki Minaj in her Twitter picture.  Therein, the victim was wearing a white crop top and short shorts.  The victim was holding a drink and posed sideways, showing both her stomach and legs.

*Hastings*:  You deleting?

The victim confirmed she was, and then sent a picture of a woman's naked breast.  The victim testified that she used an image she had found on the Internet.  Hastings responded, "Both at once please but my my wonderful[.]"  The victim retorted, "Haha your pic isn't a full one it's your turn!"  Hastings responded, "Pretty please[.]"  When the victim insisted it was Hastings's turn, he sent the victim a clothed photograph of himself with his dog.  The victim replied, "Haha omg!"  Hastings then wrote: "Nice aeriola[s]," presumably in reference to the victim's earlier photograph. And, yet again, Hastings asked the victim to show him her "screenshot[s] so I know you are deleting."

The victim insisted it was Hastings's turn to send a photograph.  When he asked what he would get, she replied:  "You'll get something in return as usual[.]"  Hastings then sent a photograph of what the victim believed to be his naked buttocks.  Hastings then asked her to "[s]how deleted and screen shotted [sic] pics[.]"  He added, "Do not betray me[.]"  The victim assured Hastings she would never do so and sent a screenshot as confirmation.

Hastings later urged the victim, "Please spoil me, let's have it all of it."  After several more texts, Hastings wrote: "Let's see it all[.]"  Thereafter, Hastings sent an emoji of a face with a tongue hanging out.  Hastings entreated, "Can't force you but you do owe me[.]"

Hastings then asked the victim when she graduated and, still later, asked her to "send your last one on over."  But the victim explained to Hastings that, if she sent him one, he would "have to go again too[.]"  The victim wrote:  "I have to see yours all too!" and "You owe me the goods."  The victim then texted she would graduate on May 22nd, adding Hastings would "have to show" her his "last one too."  Hastings responded, "It will be after June 3 in person[.]"  Hasting then wrote, "Let's see it."  The victim again told Hastings she would, but only if he did; otherwise, "it'll be June 3rd too[.]"

Hastings complained, "Whaaaaa lame[.]"  The victim texted Hastings that she could say the same about him.  Hastings asked the victim to trust him and she told him he could trust her.  Hastings then texted, "Pretty please," and "Finish it off strong[.]"  Again, the victim told Hastings she wanted to see "something good[.]"  She explained that had sent him "good stuff" and he had sent her "lame stuff."  Hastings then asked the victim to "[s]how [him] full top," adding, "That's nothing new[.]"  The victim replied, "Not until you show me something more and I'll even show you bottom and what's not?"  Hasting responded, "K" and "You first[.]"  The victim asked Hastings to promise he would "go after" she did.  Hastings replied, "Yes[.]"  At that point, the victim sent a photograph depicting a woman in tight underwear, again obtained from the Internet; one buttock was partially exposed.  Hasting's retorted, "Nice bum!!!!"

Hastings again implored the victim to "promise" she would "never repeat."  Hastings shared, "I'm sweating this talk right now lol[.]"  Hastings then sent the victim a photograph showing the unclothed area from his mid-neck to slightly below his navel.  In response, the victim continued to assure Hastings she would never betray him and was deleting.  Hastings claimed to be deleting as well.

-3-

At that point, the conversation turned to high school soccer and baseball. Hastings ended with "[D]on't be a stranger in room 121[.] See you tomorrow[.]"

At trial, the victim agreed that Hastings did not explicitly ask her to send him nude photographs, but she inferred that he wanted such images from his comments about "real spice" and statements like, "Please spoil me, let's have it all of it."

## II. OTHER-ACTS EVIDENCE

On appeal, Hastings first argues that the trial court abused its discretion in admitting the testimony of two former Jackson High School students concerning sexual relationships they had with Hastings after turning 18 years old because the evidence had no probative value, there was no issue of identity, and the probative value was outweighed by its unfairly high prejudicial effect. We disagree.

"The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). However, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *McDaniel*, 469 Mich at 412. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

MRE 401 states that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In addition, MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." However, pursuant to MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The Michigan Supreme Court provided a four-factor test to determine whether other-acts evidence is admissible under MRE 404(b). First, "the prosecutor must offer the other[-]acts evidence under something other than a character to conduct theory." *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Second, "the evidence

must be relevant under [MRE] 402 . . . to an issue or fact of consequence at trial." *Id*. "Third, the trial judge should employ the balancing process under [MRE] 403." *Id*. at 74-75. That is, "a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence" pursuant to MRE 403. *Id*. at 75 (quotation marks and citation omitted; alteration in original). "Finally, the trial court, upon request, may provide a limiting instruction under [MRE] 105." *Id*.

As stated in *People v Knox*, 469 Mich 502, 509-510; 674 NW2d 366 (2004),

> [T]he prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact within one of the exceptions [set forth in] MRE 404(b). Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence. Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded. [Quotation marks and citation omitted.]

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). Furthermore, "[l]ogical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id*. at 64. However, "[g]eneral similarity between the charged and uncharged acts does not . . ., by itself, establish a plan, scheme, or system used to commit the acts." *Id*.

To the extent that other-acts evidence is offered to prove identification through modus operandi, the admissibility of such evidence is considered under a similar test annunciated in *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982), which requires that

> (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009), quoting *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998).]

Hastings challenges the testimony offered by two former students of Jackson High School. Jane Doe[2] testified that Hastings first contacted her through Twitter, but she was unsure if the first contact occurred before or after she graduated. After Doe turned 18 and graduated,

---

[2] As the women attended the high school where Hastings taught, to protect their privacy, we will refer to them using the pseudonyms Jane Doe and Mary Roe.

she and Hastings exchanged phone numbers and began communicating primarily by text messaging and very sporadically via telephone. Their discussions became flirtatious and they agreed to meet in person to have sex. Doe had sporadic conversations and sexual encounters with Hastings over a two-year period, during which time she sent Hastings various nude photographs. Doe testified that Hastings did not expressly ask her for nude photographs, but she understood he wanted them from his comments and the context of their conversations.

Mary Roe testified that Hastings reached out to her one evening through text or Facebook Messenger the year after she graduated. Hastings obtained her number via one of her high school friends. Upon hearing Hastings's unique area code, she testified it sounded familiar to her. Although Roe declined Hastings's initial innocuous invitation to watch his dog, they continued texting. Their conversations involved flattery and eventually became more intimate, culminating in a plan to meet in person at Hastings's home. There, he gave her a tour that ended in his bedroom, where they had sex. They continued to communicate by text and arranged to meet again. Hastings instructed Roe to let herself in, undress, and wait in bed for him. After this encounter, they mutually parted ways. Roe was 19 years old at that time.

Turning to the admissibility of this evidence, the prosecution offered the other-acts evidence to show Hastings's identity, intent, and common scheme or plan. These are all proper purposes pursuant to MRE 404(b)(1). See *Knox*, 469 Mich at 509.

This other-acts testimony showed that Hastings initiated contact with two female Jackson High School students through text messages or social media accounts right before or shortly after they graduated. Thereafter, Hastings engaged in flirtatious conversations with both witnesses through private text messaging on his cell phone that evolved into discussions of a sexual nature. Although there is no indication that Hastings asked Roe to provide pictures of herself, Doe believed Hastings's suggestive comments were intended to solicit nude photographs. In both instances, Hastings began a sexual relationship with the witnesses after initiating contact.

This testimony was relevant to an issue at trial; specifically, whether Hastings sent text messages to the victim with the intent to obtain sexually explicit pictures from her. See *id*. The similarity of Hastings's interactions with former female students and the victim around the time of their graduations made it more probable that Hastings was the individual who contacted the victim through Twitter and text messages from his cell phone, see *Waclawski*, 286 Mich App at 673, which was material to the determination of his guilt, see *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) ("[I]t is well settled that identity is an element of every offense.").[3]

---

[3] Hastings argues that his identity was not at issue at trial because it was undisputed that he and the victim were the individuals communicating in the text messages offered in evidence. We find this argument unpersuasive. When he was first confronted with the victim's allegations, Hastings claimed that the messages were "cut and pasted" and that his phone had been stolen for 24 hours. In addition, Hastings repeatedly challenged the authenticity of the messages during pretrial proceedings. He argued that, at best, the prosecution could link the victim's messages to a cellular telephone number belonging to his mother and used by him, but it could not establish that Hastings was the one communicating with the victim. And, although it appears that

In addition, the charged acts (attempting to obtain child sexually abusive material and use of a computer to commit a crime) and the previous acts "shared sufficient common features to infer a plan, scheme, or system to do the acts." *Sabin (After Remand)*, 463 Mich at 66. Again, given the clear similarities between the prior acts and the charged acts, the trial court could infer that Hastings developed a plan or scheme to contact Jackson High School students who had recently graduated or who were about to graduate to obtain sexually explicit photos from them and initiate a sexual relationship with them.

Further, the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. See *VanderVliet*, 444 Mich at 74-75; *Waclawski*, 286 Mich App at 673. In arguing that Hastings's conduct did not meet the elements of the charged offenses, defense counsel emphasized in closing arguments that Hastings did not intend to solicit a sexually explicit photograph from the victim, he never asked for such a photograph, and the photographs he received did not actually depict the minor victim. However, the testimony from the two witnesses was highly probative of Hastings's intent in sending the text messages to the victim. In other words, this evidence negated his claim that he did not intend to ask for nude pictures from the victim. Moreover, the prejudicial effect of this evidence was limited because both witnesses acknowledged that they were 18 years old and had graduated from high school when they started their consensual sexual relationships with Hastings.

Finally, the trial court gave the jury the following instruction:

> You've heard evidence that was introduced to show the defendant committed improper acts for which he is not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes.

> You may only think about whether this evidence tends to show the defendant had a reason to commit the crime, the defendant specifically meant to commit the crime, the defendant knew what the things found in his possession were, the defendant acted purposefully – that is, not by accident or mistake or because he misjudged a situation, the defendant used a plan, system or characteristic scheme that he has used before or since. And who committed the crime the defendant is charged with.

> You must not consider this evidence for any other purpose. For example, you must not decide that it shows the defendant is a bad person or that he's likely to commit crimes. You must not convict the defendant here because you think he's guilty of other bad conduct. All the evidence must convince you, beyond a reasonable doubt, defendant committed the alleged crime or you must find him not guilty.

---

Hastings largely abandoned this defense theory on the second day of trial, evidence of his initial response was still presented to the jury. Furthermore, in his opening statement, defense counsel asked the jury to focus on the content of the text messages "if, in fact, you believe that those text messages did, in fact, come from Mr. Hastings."

By instructing the jury in this manner, the trial court lessened the risk of unfair prejudice arising from the other-acts evidence. See *VanderVliet*, 444 Mich at 75. See also *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) ("[J]urors are presumed to follow their instructions."). Accordingly, the trial court did not abuse its discretion in admitting the other-acts evidence.[4]

## III. GREAT WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE

Next, Hastings argues that his convictions of distributing or promoting child sexually abusive material and using a computer to commit a crime were against the great weight of the evidence and that the evidence presented at trial was insufficient to sustain his convictions. We disagree.

"This Court reviews for an abuse of discretion the trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *Douglas*, 496 Mich at 565 (quotation marks and citation omitted). "[A] trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

When reviewing a sufficiency of the evidence claim, this Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

Pursuant to MCL 750.145c(3), "[*a*] *person who* distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, *attempts*, or prepares *to* distribute, *receive*, finance, or promote *any child sexually abusive material* or child sexually abusive activity is guilty of a felony . . . ." (Emphasis added.) "Child sexually abusive material" is defined as

> any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing

---

[4] Even if the other-acts evidence had been admitted for a proper as well as an improper purpose or purposes, a premise we reject, reversal is not be required. See, e.g., *Sabin (After Remand)*, 463 Mich at 61-73; *People v Pesquera*, 244 Mich App 305, 318-320; 625 NW2d 407 (2001).

such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.  [MCL 750.145c(1)(o).]

Erotic nudity, "the lascivious exhibition of the genital, pubic, or rectal area of any person," is a listed sexual act.  MCL 750.145c(1)(h) and (*i*).  " '[L]ascivious' means wanton, lewd, and lustful and tending to produce voluptuous or lewd emotions."  MCL 750.145c(1)(h).  For purposes of this offense, an individual under the age of 18 years old is considered a child.  MCL 750.145c(1)(c).  Hastings was also convicted of using a computer to commit a crime under MCL 750.145d(1)(a), which states that "[a] person shall not use the internet or a computer, computer program, computer network, or computer system to communicate with any person for the purpose of . . . soliciting another person to commit conduct proscribed under" several statutes, including MCL 750.145c.

At trial, the prosecution presented printouts of the actual text message conversation that occurred between Hastings and the victim, and the victim read them to the jury.  When discussing the exchange of pictures with the victim, Hastings's messages included the following comments: "You better send real spice . . ."; "I want the good stuff"; "Please spoil me, let's have it all of it"; and "Let's see it all[.]"  Hastings sent the victim pictures of his bare chest, his naked buttocks, and the area from his neck to below his navel.  And Hastings intimated the victim could see all of him after graduation.  Hastings encouraged the victim to "[f]inish it off strong[.]"  When the victim asked Hastings to show her something more, she offered to show him "bottom and what's not?"  Hastings responded with "K" and "You first[.]"  In addition, Hastings asked the victim for proof that she was deleting his text messages and turned in his cellular telephone so that its contents could not be downloaded; both could be construed as consciousness of guilt.  See *Unger*, 278 Mich App at 226 (reasoning that an attempt to destroy evidence demonstrates a consciousness of guilt).  On top of that, after Hastings was confronted, he falsely claimed his cell phone had been taken during the time the messages were sent.  See, e.g., *People v Arnold*, 43 Mich 303, 305-306; 5 NW 385 (1880); *People v Dandron*, 70 Mich App 439, 442-443; 245 NW2d 782 (1976) (a defendant's "proved-to-be false exculpatory statement[]" can supply circumstantial evidence of his guilt.)  Further, the victim testified that she interpreted Hastings's text messages to mean that he wanted her to send him a full naked picture of herself.  Finally, the prosecutor submitted MRE 404(b) evidence from a former Jackson High School student indicating that Hastings also sought naked pictures via text message.  Both that witness and another former student engaged in sexual relationships with Hastings shortly after graduating from high school, which suggests that Hastings's interactions with the victim were motivated by his sexual desires.

Given the evidence that was presented at trial, including Hastings's own text messages, a reasonable jury could conclude beyond a reasonable doubt that Hastings attempted to obtain

child sexually abusive material from the 17-year-old victim, and that he used a computer[5] to do so. Although the victim did not send a picture of herself, the text messages suggested that Hastings believed that the pictures were of the victim. Therefore, sufficient evidence was presented to support Hastings's convictions. *Lane*, 308 Mich App at 57. Likewise, the evidence does not preponderate so "heavily against the verdict . . . that it would be a miscarriage of justice to allow the verdict to stand." *Gadomski*, 232 Mich App at 28.

While we entirely agree with the dissent's adjectives describing Hastings's conduct ("puerile[,]" "stupid[,]" and "entirely inappropriate"), both the jury and trial court concluded it was also criminal. As it is highly unlikely that a defendant will explicitly ask a minor for "erotic nudity" or to engage in "the lascivious exhibition of [her] genital, pubic, or rectal area," the factfinder here was allowed, as in every case, to rely upon circumstantial evidence in making its determination. What occurred in this case is a far cry from the innocent childhood nudity described in *People v Riggs*, 237 Mich App 584, 587, 590; 604 NW2d 68 (1999). Rather, viewing the evidence in the light most favorable to the prosecution, it was sufficient to establish the elements of both crimes beyond a reasonable doubt.[6]

Affirmed.


/s/ William B. Murphy
/s/ Anica Letica

---

[5] For purposes of violating MCL 750.145d(1), a cellular telephone is considered a computer. MCL 750.145d(9)(a).

[6] The six-part test from *United States v Dost*, 636 F Supp 828, 832 (SD Cal, 1986), *aff'd sub nom* United States v Wiegand, 812 F2d 1239 (CA 9, 1987), discussed by the dissent, was partially modified on appeal and is neither exhaustive nor controlled by one factor. Importantly, it does not bind us. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts.") Notably, other courts have criticized or rejected *Dost*. See generally *State v Whited*, 506 SW3d 416, 419 (Tenn, 2016) (reviewing the cases and rejecting "the use of the *Dost* factors as a 'test' or an analytical framework" for Tennessee's child-exploitation statutes); *United States v Batchu*, 724 F3d 1, 9 (CA 1, 2013) ("We have been clear that the *Dost* factors are problematic.").